**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**LOU ANN YOUNG MAES, MD, MS,**
**8865 Englewood Farms Drive**
**Manassas, Virginia 20112**

**Plaintiff,**

**v.** **Case No. 17-2161**

**AMERICAN RED CROSS** ***JURY TRIAL DEMANDED***
**2025 E Street, NW**
**Washington, DC 20006,**

**Defendant.**

**Serve:**

**David Meltzer, General Counsel**
**American Red Cross**
**2025 E Street, NW**
**Washington, DC 20006,**

**COMPLAINT**

For her complaint against the Defendant, American Red Cross, Dr. Lou Ann Young Maes, by counsel, states as follows:

## I. NATURE OF THE CASE

1. This is an action for wrongful discharge from employment in reprisal for engaging in activity protected by the False Claims Act ("FCA"), 31 U.S.C. §3729, *et seq*., and, more specifically, 31 U.S.C. §3730(h). In addition, this action seeks relief for wrongful termination and retaliation in violation of the common law of the District of Columbia and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601, et seq.

2. The Defendant terminated Dr. Maes after she protested and attempted to stop violations of the FCA, and after she protested and attempted to stop violations of the federal

Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §1320d-6, *et seq*. In addition, Dr. Maes was terminated in retaliation for exercising important rights under the FMLA.

## II. JURISDICTION AND VENUE

3. The events complained of herein occurred in the District of Columbia and the Defendant maintains its principal place of business in the District. This action arises as a result of the Defendant's violation of the anti-retaliation provisions of the FCA, codified at 31 U.S.C. §3730(h), and the Court has subject matter jurisdiction over this action under 31 U.S.C. §3730 and 31 U.S.C. §3732.

4. In addition, this Court has jurisdiction over Dr. Maes' FMLA claim pursuant to 28 U.S.C. §2617(A)(2).

5. Finally, this Court has jurisdiction over the District of Columbia discharge against public policy claim under 28 U.S.C. §1367.

6. Venue is appropriate in this Court under 28 U.S.C. §1391.

## III. PARTIES

7. Dr. Maes is a citizen and a resident of the United States and the Commonwealth of Virginia. She maintains her principal residence at 8865 Englewood Farms Drive, Manassas, Virginia 20112. At all times relevant to this action she was an "employee" of the American Red Cross as that term is defined in applicable law.

8. American Red Cross is a 501(c)(3) corporation and maintains offices throughout the United States and the District of Columbia. It maintains its principal place of business and national headquarters at 2025 E Street, NW, Washington, D.C. 20006.

## IV. FACTS

9. At all times relevant to this matter, Dr. Maes was employed as the Medical Director for the American Red Cross's Mid-Atlantic and Appalachian Regions. Dr. Maes is a physician and is board certified in Clinical Pathology and Blood Bank/Transfusion Medicine. She was employed by the American Red Cross in this capacity beginning in March, 2010, and was wrongfully terminated on October 21, 2015.

10. Dr. Maes has, at all times relevant to the issues presented, performed her job extremely well.

11. Until August of 2014, Dr. Maes had received only the most positive feedback from her patients and American Red Cross customers. Out of 36 American Red Cross regions, Dr. Maes' territory was one of the only ones which had not lost a customer in the recent difficult economy and healthcare market. In fact, it had markedly expanded its customer base.

12. Dr. Maes grew concerned during her tenure with the American Red Cross about the organization's failure to use encrypted email when transmitting confidential patient information. This failure constituted a violation of HIPAA. She complained about this failure to several American Red Cross officials including Dr. Ann Eder, Dr. Lisa McLaughlin and Dr. Ralph Vasallo, among others.

13. Dr. Maes' complaints about the lack of encryption on American Red Cross email systems caused significant tension and enmity to exist between her and her superiors.

14. Dr. Maes was required to take FMLA leave from January through April, 2014.

15. In April of 2014, Dr. Maes initiated a conversation with Dr. Vassallo shortly before her return to work. The reason for her communication was to coordinate her return date with him. Immediately after that call, Dr. Vassallo, who was Dr. Maes' supervisor, openly

questioned the need to have Dr. Maes remain in her position. His questioning began the very day after his phone call with Dr. Maes regarding her return to work. Dr. Vassallo was upset with Dr. Maes for having taken FMLA leave and making his job materially more difficult in her absence.

16. After Dr. Maes' complaints about the lack of encrypted email and availing herself of FMLA leave, Dr. Vassallo began to treat her in a markedly different manner. In August of 2014, he accused her of not practicing evidence-based medicine and gave her a poor evaluation.

17. Dr. Maes was dismayed by the evaluation. She had no warning or any idea that Dr. Vassallo was dissatisfied with her performance. He had never indicated any dissatisfaction with her practice of medicine or her professional skills or practices.

18. In Dr. Maes' fiscal year 2014 evaluation, which was issued between August 25, 2014 and September 25, 2014, Dr. Vassallo stated as follows regarding the quality of Dr. Maes' medical decisions and practices and her compliance with professional guidelines: "Higher complexity customers are not always delighted with delays in response to requests, incompletely evidence-based recommendations, or her communication style which favors talking over listening." Accusing a physician of not practicing evidence-based medicine can be extremely problematic for them. This is known within the profession to be a term of art constituting a very serious warning flag and can prevent a physician from getting privileges in health facilities. It is not uncommon for applications for privileges at various hospitals to ask whether or not the physician has ever been accused of not practicing "evidence-based" medicine.

19. Dr. Vassallo made other negative comments in the evaluation about Dr. Maes including that she had a poor communication style, was disruptive and that she did not perform certain tasks in a satisfactory manner. All of the negative statements made by Dr. Vassallo set

forth in this paragraph and the preceding paragraphs, as well as those contained in Dr. Maes' fiscal year 2014 performance evaluation, are false.

20. Dr. Vassallo also stated that with respect to the performance goal of being "collaborative" with her colleagues, that Dr. Maes "did not meet expectations." This allegation is also false.

21. The accusation, in writing, that Dr. Maes had practiced "incompletely evidence-based" medicine has the potential for preventing her from being credentialed at various healthcare facilities and/or gaining new employment. Indeed, she has been unable to obtain employment as a physician after her termination from American Red Cross.

22. Dr. Maes' supervisor's motivations were as follows: his relationship with Dr. Maes was considered by him to be harmed by her complaints about the lack of email encryption and by her need to take FMLA leave for the first part of 2014. Both of these issues caused significant tension in mid-2014. Dr. Vasallo's dissatisfaction with Dr. Maes about these issues ultimately destroyed their relationship.

23. The issue regarding the lack of encrypted email was raised regularly by Dr. Maes until the time of her termination. More specifically, she asserted to her superiors that patient related emails were required to be encrypted under HIPAA. Throughout much of her employment, but particularly in August and September of 2015, Dr. Maes raising this issue was the subject of significant consternation among Dr. Maes' American Red Cross supervisors. They became angry with her for raising this topic.

24. In addition to HIPAA, the use of unencrypted email violated mandatory conditions of federal grants, payments and funds that were paid to the American Red Cross for various purposes. The American Red Cross was required under federal grants to certify

compliance with, among other statutes, HIPAA and the regulatory regime supporting it. These certifications were required to be made, and were made, at various times by the American Red Cross to the National Institutes of Health, the Center for Disease Control and other agencies of the United States and various states. It became clear to Dr. Maes before her termination that the American Red Cross was violating these certifications.

25. Dr. Maes made every possible effort to stop American Red Cross's violations of HIPAA and the grant and payment conditions identified above, without going to outside authorities. These efforts included several clear and simple communications to her superiors that the use of unencrypted email was unlawful and must be stopped. Dr. Maes' complaints were met with hostility and caused enmity between her and her superiors. Her complaints were a significant cause of her termination.

26. American Red Cross wrongfully terminated Dr. Maes on October 21, 2015.

27. In terminating Dr. Maes as set forth above, the Defendant intentionally and deliberately retaliated against her for protesting against the use of unencrypted mail, for engaging in protected activity under the FMLA and availing herself of FMLA leave.

## COUNT I

### Wrongful Termination in Violation of the Public Policy of the District of Columbia

***Public Policy Stated by the Health Insurance Portability and Accountability Act and Associated Regulations***

28. All allegations set forth in this Complaint are incorporated into this Count by reference.

29. Dr. Maes sought to protect and vindicate important public policy expressed in the Health Insurance Portability and Accountability Act, the statute's enabling regulations and

District of Columbia common law. Dr. Maes' efforts to vindicate the public policies contained within these laws resulted in the destruction of her relationship with her superiors.

30. In October of 2015, the American Red Cross fired Dr. Maes in retaliation for her efforts to vindicate and obtain compliance with HIPAA, HIPAA enabling regulations and District of Columbia common law.

31. As a direct, proximate and actual result of the Defendant's conduct, Dr. Maes has suffered significant pecuniary and non-pecuniary harm, including: pain, suffering, mental anguish, humiliation, loss of reputation and loss of quality and enjoyment of life. Dr. Maes has suffered pecuniary damages, including loss of back pay, front pay, and benefits, in the amount of Two Million Dollars ($2,000,000.00). Moreover, the Defendant's actions were willful, malicious, outrageous and taken in bad faith and Dr. Maes is entitled to an award of punitive damages in an amount sufficient to deter this conduct in the future.

**WHEREFORE,** Dr. Lou Ann Young Maes, respectfully prays that this Court:

a) Order the Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities to qualified individuals and which eradicate the effects of past and present violations of the public policies of the District of Columbia and to order the Defendant to reinstate Dr. Maes;

b) Order the Defendant to strike and expunge all negative portions of Dr. Maes' FY 2014 performance evaluation including those which state or imply that she practices incompletely evidence-based medicine, that she is disruptive, that she is not collaborative, etc.;

c) Order the Defendant to make Dr. Maes whole for all claims with appropriate lost earnings, future lost earnings and compensation for loss of pension and benefits with pre-

judgment and post-judgment interest as applicable, in the total amount of Two Million Dollars ($2,000,000.00);

d) Order the Defendant to pay damages to Dr. Maes in the amount of not less than Two Million Dollars ($2,000,000.00) to compensate her for the non-economic harm sustained including all pain, suffering, mental anguish, humiliation, loss of reputation and loss of quality and enjoyment of life and all such damages sustained as a result of the acts complained of herein;

d) Order the Defendant to pay punitive damages to Dr. Maes in amounts to be proved at trial sufficient to deter such conduct in the future.

**COUNT II**

**Wrongful Termination in Violation of the Public Policy of the District of Columbia**

***Violation of Public Policy Established by the FMLA***

32. All allegations set forth in this Complaint are incorporated into this Count by reference.

33. Dr. Maes sought to avail herself of the unfettered right to FMLA leave. In seeking the protection of these rights, she was also protected by the important public policy of the District of Columbia that federal statutory rights such as those enacted under the FMLA be protected and vindicated.

34. The American Red Cross retaliated against Dr. Maes for exercising her rights under the FMLA by terminating her employment on October 21, 2015.

35. The Defendant committed these violations of the FMLA willfully and in bad faith.

36. The Defendant's violations of Dr. Maes' FMLA rights culminated in her termination and resulted in, and was tantamount to, a termination against the public policy of the District of Columbia.

37. As a result of the Defendant's violation of Dr. Maes' rights guaranteed under the FMLA and District of Columbia common law, and their unlawful, intentional retaliation which resulted in significant harm to Dr. Maes' career and her professional reputation, Dr. Maes has suffered significant pecuniary and non-pecuniary losses.

38. Defendant committed these violations of the District of Columbia public policy willfully, maliciously and in bad faith.

39. The Defendant's actions as set forth above were the actual and proximate cause of the damages suffered by Dr. Maes. These damages include loss of reputation, humiliation, mental anguish, pain, suffering, anxiety and loss of quality and enjoyment of life. Dr. Maes has suffered pecuniary damages, including loss of back pay, front pay, and benefits, in the amount of Two Million Dollars ($2,000,000.00). Moreover, the Defendant's actions were willful, malicious and outrageous and made in bad faith. Dr. Maes is entitled to an award of punitive damages in an amount sufficient to deter this conduct in the future.

**WHEREFORE,** Dr. Lou Ann Young Maes, respectfully prays that this Court:

a) Order the Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities to qualified individuals and which eradicate the effects of past and present violations of the public policies of the District of Columbia and to order the Defendant to reinstate Dr. Maes;

b) Order the Defendant to strike and expunge all negative portions of Dr. Maes' FY 2014 performance evaluation including those which state or imply that she practices incompletely evidence-based medicine, that she is disruptive, that she is not collaborative, etc.;

c) Order the Defendant to make Dr. Maes whole with appropriate lost earnings, future lost earnings and compensation for loss of pension and benefits with pre-judgment and post-judgment interest as applicable, in the total amount of Two Million Dollars ($2,000,000.00);

d) Order the Defendant to pay damages to Dr. Maes in the amount of not less than Two Million Dollars ($2,000,000.00) to compensate her for the non-economic harm sustained including all pain, suffering, mental anguish, humiliation, and loss of quality and enjoyment of life and all such damages sustained as a result of the acts complained of herein;

e) Order the Defendant to pay punitive damages to Dr. Maes in amounts to be proved at trial and which is sufficient to deter such conduct in the future.

## COUNT III

### Retaliation in Violation of the FMLA

40. All allegations set forth in this Complaint are incorporated into this Count by reference.

41. Dr. Maes was discharged by the Defendant in violation of the FMLA. Specifically, Dr. Maes availed herself of FMLA leave prior to her termination. Dr. Maes' being out on FMLA leave caused the Defendant and their supervisors difficulty and caused enmity to develop between the supervisors and Dr. Maes. The Defendant ultimately terminated Dr. Maes in retaliation for exercising her rights under the FMLA.

42. Defendant committed these violations of the FMLA willfully and in bad faith.

43. As a result of Defendant's violation of Dr. Maes' rights guaranteed under the FMLA and its unlawful, intentional retaliation which resulted in the destruction of her career with the Defendant, Dr. Maes has suffered significant pecuniary losses including loss of past and future income, loss of seniority and benefits and loss of pension. Defendant committed all violations alleged herein willfully, maliciously and in bad faith.

**WHEREFORE**, Dr. Lou Ann Young Maes respectfully prays that this Court:

a) Order the Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities to qualified individuals and which eradicate the effects of past and present violations of the FMLA and order the Defendant to reinstate Dr. Maes;

b) Order the Defendant to make Dr. Maes whole with a payment of appropriate lost earnings, future lost earnings and compensation for loss of pensions and benefits with pre-judgment and post-judgment interest as applicable, in amounts to be proved at trial;

c) Order the Defendant to pay Dr. Maes liquidated damages in an amount at least equivalent to the economic loss proved as a result of her FMLA claim, with pre-judgment and post-judgment as applicable;

d) Order the Defendant to pay Dr. Maes' reasonable attorney's fees, expert witness fees and costs incurred in bringing and prosecuting her FMLA claim with pre-judgment and post-judgment interest as applicable;

e) Order the Defendant to provide Dr. Maes all such other relief as the Court deems to be just.

## COUNT IV

### Retaliation in Violation of the False Claims Act

44. All allegations set forth in this Complaint are incorporated into this Count by reference..

45. Under the False Claims Act, a party can be held liable for a) knowingly[1] presenting to the government, or causing to be presented, a false or fraudulent claim for payment or approval; b) knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim; or c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government. 31 U.S.C. §3729(a). It is critical to note that specific intent to defraud is not necessary to prove a claim under the False Claims Act. 31 U.S.C. §3729(b).

46. There are two general types of claims that can be asserted under the False Claims Act: claims that are legally false and claims that are factually false. An example of a factually false claim is presented where there is a contract to supply 1,000 pieces of equipment to the government, the contractor bills the government and is paid for 1,000 pieces of equipment, but knew that only 900 pieces of equipment were actually delivered. A legally false claim is one in which representations and certifications are made to the government about the provenance, quality or nature of products or services delivered to the government which are not true.[2]

47. Dr. Maes understood that the American Red Cross had been required to certify to the government agencies named above that they operated in full compliance with HIPAA. Dr. Maes further understood that funding from these government agencies depended upon this

---

[1] Under the False Claims Act "knowingly" means: actual knowledge of the information; acting in deliberate ignorance of the truth or falsity of the information; or acting in reckless disregard of the truth or falsity of the information. 31 U.S.C. §3729(b).

[2] This type of claim could also apply to the general circumstances in which a service is performed or a product is made or delivered.

certification and the American Red Cross actually conducting its operations in compliance with HIPAA. HIPAA requires that confidential patient information be communicated on encrypted email systems.

48. Dr. Maes protested with her supervisors at the American Red Cross because they were using and allowing their personnel to use unencrypted email to convey and communicate HIPAA protected patient confidential medical information. Dr. Maes attempted to stop these violations of HIPAA and the resulting violations of the FCA on several occasions. The Defendant retaliated against Dr. Maes for this conduct by terminating her.

49. Given the circumstances related herein, a reasonable person in Dr. Maes' position would have considered filing, and Dr. Maes in fact considered filing, an action against the American Red Cross under the False Claims Act. Such an action indeed became a distinct and reasonable possibility as soon as Dr. Maes became aware of all facts related above.

50. Dr. Maes engaged in protected activity under 31 U.S.C. §3730(h) when she raised concerns, complaints and attempted to stop the violations of the FCA set forth above.

51. The Defendant ignored Dr. Maes' concerns and protests and terminated her because she complained about, questioned and attempted to stop these violations.

52. The Defendant's conduct was the proximate and actual cause of significant economic and non-economic harm to Dr. Maes. As a result of Defendant's actions, Dr. Maes has suffered significant pecuniary and non-pecuniary damages including loss of future pay and benefits, loss of back pay and benefits, loss of promotion opportunities, retirement benefits as well as mental anguish, anxiety, pain, suffering, humiliation, loss of reputation, and loss of quality and enjoyment of life.

**WHEREFORE,** Dr. Lou Ann Young Maes, respectfully prays that this Court:

a) Order the Defendant to restore Dr. Maes to her former position or a comparable position and award her other equitable relief as appropriate

b) Order the Defendant to institute programs, practices and policies, which eradicate the effects of past retaliation in violation of the FCA;

c) Order the Defendant to make Dr. Maes whole for all claims with appropriate lost earnings, future lost earnings and compensation for loss of future pension and benefits with pre-judgment and post-judgment interest as applicable, in the total amount of Two Million Dollars ($2,000,000.00);

d) Order the Defendant to pay Dr. Maes an additional and separate amount equivalent to the back pay loss proved, with pre-judgment and post-judgment interest as applicable;

e) Order the Defendant to pay damages to Dr. Maes in the amount of Two Million Dollars ($2,000,000.00) to compensate her for the non-economic harm sustained including all pain, suffering, mental anguish, humiliation, and loss of quality and enjoyment of life and all such harm sustained as a result of the acts complained of herein;

f) Order the Defendant to pay punitive damages to Dr. Maes in amounts to be proved at trial and which is sufficient to deter such conduct in the future.

**JURY TRIAL DEMANDED**

Plaintiff, Dr. Lou Ann Young Maes, requests a jury trial on all issues raised in this Complaint.

Respectfully submitted,

**LOU ANN YOUNG MAES, MD, MS**

By: *_/s/ James H. Shoemaker, Jr._*
Of Counsel

Dated: October 18, 2017

James H. Shoemaker, Jr., DC Bar No. VA029
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4518
Jshoemaker@pwhd.com